# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:11-CV-133

**OHIO RIVER TRADING CO., INC**  PLAINTIFF

V.

**CSX TRANSPORTATION, INC.**  DEFENDANT

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion to Remand (DN 10). Defendant has responded (DN 13) and has filed a Motion for Leave to File Amended Petition for Removal (DN 14). Plaintiff has replied (DN 15). For the reasons that follow, Plaintiffs' motion (DN 10) is GRANTED and Defendant's motion (DN 14) is DENIED.

## BACKGROUND

Plaintiff Ohio River Trading Company (ORTC) filed a Verified Petition for Condemnation in Todd County Circuit Court pursuant to the Kentucky Eminent Domain Act, KRS 277.040 and KRS 416.540 et seq. The real property that is the subject of this action is located in Todd County, Kentucky. ORTC seeks to condemn the CSXT rail crossing for construction of a permanent haul road crossing over the rail track and for a temporary construction easement along the CSXT rail track. In connection with the condemnation, ORTC further requested the appointment of three Court Commissioners to determine the amount of compensation to be awarded.

Shackelford Farms, the owner of the property on which the rail crossing is situated, leases the property to ORTC to operate a limestone quarry. CSXT owns an easement for its rail track. In a previous action between CSXT and the previous tenants of the land, Judge McKinley found

that CSXT had the "right to reasonable use of its easement—the right to run its trains along the tracks" and that the owners of the fee had "the right to use the crossing for ingress and egress." ORTC asserts that the current rail crossing of 14 feet and 3 inches is not amenable to large trucks coming into and out of the property.

CSXT filed a Petition for Removal (DN 1) based on § 1332 diversity jurisdiction. The Petition stated that Defendant CSXT was a citizen of Virginia and Florida, and that Plaintiff ORTC was a citizen of Delaware and Kentucky. The Petition further stated that the amount in controversy requirement was satisfied because the rights and interests in the use of the rail crossing will likely exceed the $75,000 jurisdictional amount. Plaintiff ORTC now moves to remand this action to state court. In the motion, Plaintiff asserts that the amount in controversy requirement is not satisfied.

## STANDARD

To establish subject matter jurisdiction based on diversity of citizenship, the amount in controversy must be at least $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction under section 1332 is determined at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). On motions to remand, the district court must scrutinize "whether the action was properly removed in the first place." *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). "[W]here the plaintiff's complaint does not specify an amount of damages and does not affirmatively deny that damages will exceed $75,000, the burden is on the defendant seeking removal 'to show by a preponderance of the evidence that the amount-in-controversy requirement has been met.'" *Riley v. Sodexho, Inc.*, No. 07–CV-86, 2007 WL 2592220, at *2 (E.D. Ky. Sept. 5, 2007) (quoting *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001)). It not required that the defendants prove to a legal certainty that

plaintiff's damages meet the amount-in-controversy requirement. *Hayes*, 266 F.3d at 572. Still, the defendant "must prove more than a 'possibility' of recovery in excess of $75,000" for diversity jurisdiction to attach. *Tinsley v. Connecticut General Life Ins. Co.*, 744 F. Supp. 2d 637, 645 (W.D. Ky. 2010). Finally, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b).

## ANALYSIS

Defendant CSXT contends that this matter is properly before the Court on the basis of diversity jurisdiction and, for the first time in its Response to Plaintiff's Motion to Remand, federal question jurisdiction. The Court will address each basis for subject matter jurisdiction.

1. **Diversity Jurisdiction**

In its petition for condemnation, ORTC does not does not specify an amount of damages and does not affirmatively deny that damages will exceed $75,000. Accordingly, the burden is on CSXT to show by a preponderance of the evidence that the amount-in-controversy requirement has been met.

### The Proper Measure of the Amount in Controversy

In its motion, ORTC states that the amount in controversy requirement is not satisfied because, even if it is determined that the taking is compensable, the valuation of the taking is far below the $75,000 jurisdictional amount. CSXT, who characterizes this action as a declaratory action, asserts that the amount in controversy is measured by the value of the object of the litigation—the value of the consequences which may result from litigation. If that is the proper

measure of the amount in controversy, CSXT claims that it may incur expenses associated with the installation of a new full-width concrete crossing in excess of $75,000.

The Court does not agree with CSXT's characterization of this action as a declaratory judgment action. Although under the Kentucky Eminent Domain Act the judge must find that the petitioner has the right to condemn the property at issue, a petition filed under the EDA is not a declaratory judgment action. A declaratory judgment "establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Black's Law Dictionary* 859 (8th ed. 2004). A petition, on the other hand, is "a formal written request presented to a court or other official body." *Id*. at 1182. ORTC, by filing a petition for condemnation in Todd Circuit Court, requested the court to confirm its right to condemn the property, to authorize it to take possession of the property upon proper compensation, and to order the conveyance of the property by instrument. If this were a declaratory judgment action, a court could only determine the right of ORTC to condemn the subject property and could not provide for enforcement. Furthermore, such a determination in a declaratory judgment action would be a final judgment and immediately appealable. Under the Eminent Domain Act, after the judge finds that the petitioner has the right to condemn the property, the property owner cannot immediately appeal or file exceptions concerning the right of the petitioner to condemn the property. KRS § 416.620(1)-(2). Final judgment is only entered after the amount of compensation is determined and the court makes such orders as may be proper for the conveyance of the title of the condemned property. KRS § 416.620(6).

CSXT cites *Art Neon Co. v. Denver* to support its contention that, in eminent domain actions, the compensable value of the taking is not the proper standard for determining the amount in controversy. 357 F. Supp. 466 (D.C. Colo. 1973). In that case the plaintiffs

challenged the constitutionality of a city sign ordinance as a taking without just compensation and sought injunctive relief against enforcement of the ordinance. *Id*. The court in that case did find that the proper measure of the amount in controversy was "the pecuniary result to either party which the judgment would directly produce." *Id*. at 469. However, in the instant case, neither party seeks injunctive relief or a determination that the statute under which ORTC proceeds is invalid or unconstitutional. *Art Neon* did not involve a petition for condemnation, and its standard to measure the amount in controversy does not apply here. Because a petition for condemnation is distinct from a declaratory judgment action, the method for determining the amount in controversy proposed by CSXT is inapplicable in this matter.[1]

## The Amount in Controversy

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Resources Company*, 266 F.3d 560, 565 (6th Cir. 2001). In the amount in controversy context, "most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the type of damages sought by the plaintiff." *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973).

In condemnations pursued under the Eminent Domain Act, the amount of compensation the owner of the property is entitled to receive is determined by court-appointed commissioners. Those commissioners are directed to award a sum that will fairly represent the reduction in the market value of the entire property. KRS § 416.580(1). Likewise, the Kentucky Supreme Court has stated that, where part of a tract of land is taken," the measure of just compensation is the difference between the fair market value of the property immediately before the taking and the

---

[1] If this case were a declaratory judgment action, it is likely that CSXT would have premised its petition for removal based on the Declaratory Judgment Act. The fact that CSXT did not do so undermines its assertion that this action is a declaratory judgment action.

fair market value of the remainder immediately afterwards." *Commonwealth v. R.J. Corman Railroad Company/Memphis Line*, 116 S.W.3d 488, 491 (Ky. 2003). However, "[n]ot all information may reasonably be considered in the valuation process, for some measures of value are irrelevant to the determination of fair market value, while others are deemed non-compensable." *Id*. at 492. For example, the Kentucky Supreme Court found that factors such as anticipated expenses for the maintenance and operation of the crossing and the estimated litigation and clean-up costs for accidents predicted to occur at the crossing may not be included in determining the amount of compensation. *Id*. at 492-93.

CSXT has not put forth evidence regarding the valuation of the taking, or the measure of just compensation. However, CSXT did assert that in the event ORTC successfully condemns the subject property, it will incur substantial expenses to maintain the function of its railway through the crossing.[2] CSXT has provided a Force Account Estimate (FAE) of its costs related to the modification of the rail crossing. The FAE states that CSXT would necessarily incur expenses for engineering services, for flagging and contract labor, and for materials and labor related to removing the current rail track and installing the new rail track. These expenses would allegedly exceed the jurisdictional amount of $75,000.

However, the types of damages submitted by CSXT are barred under Kentucky substantive law. Under Kentucky law, the measure of just compensation is the difference between the fair market value of the property immediately before the taking and the fair market value of the remainder immediately afterwards. The expenses put forth by CSXT are either irrelevant to a determination of the fair market value of the subject property, or are non-compensable. Accordingly, these damages are unavailable under Kentucky law.

---

[2] The Court notes that ORTC has clearly stated that it will bear all of the expenses of widening the crossing, either paying its own engineer and contractor to design and widen the crossing in close cooperation with CSXT personnel or paying CSXT to design and widen the crossing.

ORTC has put forth evidence regarding the measure of just compensation in this case. Using the "Across the Fence" method recommended by the certified appraiser retained by ORTC, ORTC submits that the maximum amount of compensation would be well below the $75,000 jurisdictional amount. The appraiser calculated that 4,600 square feet would need to be condemned to widen the crossing to 60 feet and that the value of the land would be .14 cents per square foot. Applying the highest multiplier or "corridor factor" that is utilized in other cases, 3.34, results in a compensable taking of $2,150.96. Because CSXT has not put forth evidence regarding the valuation of the subject property, and it is not probable that the damages in this action will exceed $75,000, the Court finds that CSXT has failed to show by a preponderance of the evidence that the amount in controversy requirement has been met. Accordingly, this Court does not have diversity jurisdiction in this matter.

## 2. **Federal Question Jurisdiction**

CSXT next contends that this action is properly before the Court based upon federal question jurisdiction. Although not mentioned in its Petition for Removal, Defendant CSXT first argues this point in its Response to Plaintiff's Motion to Remand (DN 13) and has filed a Motion for Leave to File Amended Petition for Removal (DN 14). CSXT alleges that, based upon recent pleadings by Plaintiff, it has now become clear that this Court has federal question jurisdiction. Specifically, for the first time in Plaintiff's Motion to Remand, the plaintiff pled that the purpose of the condemnation is to widen the road at the crossing for the express purposes of permitting multiple trucks to cross CSXT's tracks simultaneously.[3] Because of this stated purpose, CSXT claims that the Interstate Commerce Commission Termination Act (ICCTA)[4] expressly preempts any state law impairing railway operations and facilities.

---

[3] For the time being, the Court will bypass CSXT's dubious assertion that this statement of purpose in Plaintiff's Motion to Remand was the first time it could be ascertained that the case was removable on the basis of federal question jurisdiction.
[4] 49 U.S.C. § 10501(b).

Section 10501 of the ICCTA is the Congressional expression of the jurisdiction of the Surface Transportation Board (STB), which the ICCTA created to regulate rail transportation. That section provides the STB with jurisdiction over the following: (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State. *City of Sachse, Texas v. KC Southern Ry Co*., 564 F.Supp.2d 649, 655-56 (E.D. Tex. 2008). The statute goes on to provide that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.* at 656. Despite this broad expression of policy, the courts and the STB have not found the ICCTA to categorically preempt state condemnation proceedings. *Id*. In the context of railway crossings, "where the power of eminent domain is invoked to construct a mundane structure such as a railway crossing, the ICCTA completely preempts state law if the project would impede rail operations or pose undue safety risks." *Id.* (internal quotations omitted).

CSXT claims that allowing more than one truck to cross CSXT's railway simultaneously poses an undue safety risk to its rail operations. Specifically, because the strip of land between U.S Highway 41 and the rail crossing is so thin, trucks crossing the track extend across the track while waiting to turn onto the highway resulting in a continuing risk of collision. In *City of Sachse*, the court noted that "subject matter jurisdiction must be based on the facts surrounding the railroad crossing design on record at the time of removal." *Id*. at 656. Here, there is no design for the railroad crossing before this Court. The only statement as to the proposed design of the crossing comes from ORTC, which stated that three vehicles will be able to occupy the widened crossing at the same time: one entering, one exiting right, and one exiting left. Besides CSXT's assertion that allowing multiple trucks to simultaneously cross the track will increase collision risks, there is no evidence that this

design poses undue safety risks. Trucks already use this crossing to access U.S. Highway 41 and it is difficult to ascertain how the already-present risk of collision is increased by widening the crossing.[5] In fact, this type of risk is present at all railroad crossings and does not impede railroad operations or pose undue safety risks.[6] Accordingly, there is not a sufficient basis for finding that the ICCTA preempts this matter.

## CONCLUSION

Because this Court has determined that the amount in controversy requirement for diversity jurisdiction has not been met, and that there is no basis for finding that the ICCTA preempts this matter, IT IS HEREBY ORDERED Plaintiff's Motion to Remand is GRANTED. Having found that the ICCTA does not preempt this matter, it is unnecessary to address whether there is a sufficient basis to allow Defendant to file its amended petition for removal. Accordingly, IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Amended Petition for Removal is DENIED. This matter is remanded to the Todd Circuit Court.

---

[5] Plaintiff ORTC points out that because trucks already using the crossing must cross one at a time, allowing multiple trucks to cross simultaneously will reduce the amount of time that trucks are crossing the tracks.
[6] Additionally, Judge McKinley has previously ruled that if CSXT wishes to add safety features it must do so at its own expense.